**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| OANDA CORPORATION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 3:20-cv-05784-BRM-DEA |
| | : | |
| GAIN CAPITAL HOLDINGS, INC., and GAIN CAPITAL GROUP, LLC. | : | |
| | : | |
| Defendants. | : | **OPINION** |
| | : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion to Stay filed by Defendants GAIN Capital Holdings, Inc. and GAIN Capital Group, LLC (collectively "GAIN"). (ECF No. 34.) Plaintiff OANDA Corporation ("OANDA") opposed the Motion to Stay. (ECF No. 36.) GAIN filed a Reply in support of its Motion to Stay. (ECF No. 38.) OANDA filed a Sur-reply in opposition to GAIN's Motion to Stay. (ECF No. 43.) GAIN responded to OANDA's Sur-reply. (ECF No. 44.) OANDA filed a Status Report. (ECF No. 48.) GAIN filed a letter in response to OANDA's Status Report. (ECF No. 49.) OANDA responded to GAIN's letter. (ECF No. 50.) Also before this Court is GAIN's Motion to Dismiss (ECF No. 24) OANDA's Complaint (ECF No. 1) pursuant to Federal Rule of Civil Procedure 12(b)(6). OANDA opposed the Motion to Dismiss. (ECF No. 32.) GAIN filed a Reply in support of its Motion to Dismiss. (ECF No. 33.) Having reviewed the submissions filed in connection with the motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause appearing, GAIN's

Motion to Stay is **DENIED**, and GAIN's Motion to Dismiss is **GRANTED IN PART and DENIED IN PART**.

## I.   BACKGROUND

OANDA is a global leader in online multi-asset trading services and currency data and analytics. (ECF No. 1 at ¶ 2.) OANDA is the owner, by assignment, of U.S. Patents Nos. 7,146,336 ("the '336 patent") and 8,392,311 ("the '331 patent") (collectively the "Patents-in-Suit"). (*Id.* at ¶ 3.) The Patents-in-Suit cover a system for trading currencies over a computer network. (*Id.* at ¶¶ 26, 46.) GAIN is a global provider of trading services and solutions, specializing in over-the-counter and exchange-traded markets. (ECF No. 34 at 11.) GAIN owns and operates the website www.forex.com, which offers various trading services and software platforms. (*Id.*)

On October 25, 2018, Ahsan Shaikh, an attorney at McDermott Will & Emery LLP, sent a letter on behalf of OANDA to Glenn H. Stevens of GAIN. (ECF No. 24-3 at 2.) The letter identified three patents, including the Patents-in-Suit, which OANDA alleged GAIN might be infringing. (*Id.*) On May 11, 2020, OANDA filed a Complaint against GAIN, alleging infringement of the '336 patent (Count I), infringement of the '311 patent (Count II), contributory and induced infringement (Count III), and willful infringement (Count IV). (ECF No. 1.) On July 17, 2020, GAIN filed a Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 24.) On August 25, 2020, OANDA opposed the Motion to Dismiss. (ECF No. 32.) On September 1, 2020, GAIN filed a Reply in support of its Motion to Dismiss. (ECF No. 33.)

On September 14, 2020, and September 15, 2020, GAIN filed petitions for covered business method ("CBM") review before the U.S. Patent Trial and Appeal Board ("PTAB"), seeking to invalidate every claim of the Patents-in-Suit on 35 U.S.C. § 101 grounds. (ECF No. 34-1 at 13.) On September 17, 2020, GAIN filed a Motion to Stay this action pending resolution of

GAIN's CBM petitions. (ECF No. 34.) On October 5, 2020, OANDA opposed GAIN's Motion to

Stay. (ECF No. 36.) On October 13, 2020, GAIN filed a Reply in support of its Motion to Stay.

(ECF No. 38.) On October 15, 2020, OANDA filed a Sur-reply in opposition to GAIN's Motion

to Stay. (ECF No. 43.) On October 17, 2021, OANDA filed a Motion for Leave to File Sur-reply

in opposition to GAIN's Motion to Dismiss (ECF No. 37), which the Court declines to consider at

this stage (*see* Part III.B.1.b, *supra*). On October 19, 2020, GAIN responded to OANDA's Sur-

reply. (ECF No. 44.) On March 19, 2021, OANDA filed a Status Report, advising the Court that

the PTAB denied institution of GAIN's CBM petitions. (ECF No. 48.) On March 21, 2021, GAIN

filed a letter in response to OANDA's Status Report. (ECF No. 49.) On March 22, 2022, OANDA

responded to GAIN's letter. (ECF No. 50.)

## II.  LEGAL STANDARD

### A.  Motion to Stay

Every court has the inherent

> power to stay proceedings . . . to control the disposition of the causes
> on its docket with economy of time and effort for itself, for counsel,
> and for litigants. How this can best be done calls for the exercise of
> judgment, which must weigh competing interests and maintain an
> even balance.

*Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936) (citing *Kansas City S. Ry. Co. v. U.S.*, 282 U.S.

760, 763 (1931)). With respect to patent cases, courts have "consistently recognized the inherent

power of the district courts to grant a stay pending reexamination of a patent." *P & G v. Kraft*

*Foods Glob., Inc.*, 549 F.3d 842, 849 (Fed. Cir. 2008) (citations omitted). "The decision to stay a

patent case in which a reexamination by [United States Patent Trademark Office ("PTO")] has

been requested is within the discretion of the district court." *ICI Uniqema, Inc. v. Kobo Prods.,*

*Inc.*, No. 06-2943, 2009 U.S. Dist. LEXIS 108421, at *2 (D.N.J. Nov. 20, 2009) (citing *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988)).

"The thought that a PTO decision may unnecessarily complicate the litigation and could create an awkward situation if different conclusions are reached overlooks that challenging validity in a court and requesting PTO reexamination 'are concepts not in conflict.'" *Ethicon*, 849 F.2d at 1428 (citing *In re Etter*, 756 F.2d 852, 857 (Fed. Cir. 1985)). "[D]ifferent results between the two forums may be entirely reasonable," because "the two forums have different standards of proof for determining invalidity." *Id.* at 1428–29. District courts are "under no obligation to delay their own proceedings by yielding to ongoing USPTO patent reexaminations, regardless of their relevancy to infringement claims which the court must analyze." *Oy Ajat, Ltd. v. Vatech Am., Inc.*, No. 10-4875, 2012 U.S. Dist. LEXIS 43443, 2012 WL 1067900, at *19 (D.N.J. Mar. 29, 2012) (citations omitted).

Section 18 of the Leahy—Smith America Invents Act ("AIA") provides an avenue for a "transitional post-grant review" proceeding to reexamine the validity of CBM patents. AIA § 18, Pub. L. No. 112-29, 125 Stat. 284, 331 (2011). "[T]he fundamental purpose of the CBM review process is 'to provide a cost-efficient alternative to litigation.'" *Smartflash LLC v. Apple Inc.*, 621 F. App'x 995, 1003 (Fed. Cir. 2015) (citing 157 Cong. Rec. S1364 (daily ed. Mar. 8, 2011)). "CBM review came into effect . . . in September 2012," *Market-Alerts Pty. Ltd. v. Bloomberg Fin. L.P.*, 922 F. Supp. 2d 486, 490 (D. Del. 2013), and "will stop accepting new claims in 2020." *Return Mail, Inc. v. United States Postal Serv.*, 139 S. Ct. 1853, 1860 n.1 (2019) (citations omitted). In determining whether a stay is appropriate pending a CBM review, Section 18(b)(1) of the AIA directs the district court to consider:

> (A) whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial;

(B) whether discovery is complete and whether a trial date has been set;
(C) whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and
(D) whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.

AIA § 18(b)(1), Pub. L. No. 112-29, 125 Stat. 284, 331 (2011). As such, the Court will consider all the four factors in the following.

### B.    Motion to Dismiss

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286 (citations omitted). Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citing *Papasan*, 478 U.S. at 286).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is

liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement." *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "further factual enhancement" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (citing Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citing *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286 (citations omitted).

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss to a summary judgment motion, including items that are *integral to or explicitly relied upon* in the complaint." *Coulter v. Doerr*, 486 F. App'x 227, 228 (3d Cir. 2012) (citing *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999)).

III.   **DECISION**

  C.   **Motion to Stay**

   1.   **A Stay Is Unlikely to Simplify the Issues and Streamline the Trial**

GAIN claims a stay until completion of the CBM proceedings will simplify and potentially wholly eliminate the issues for trial. (ECF No. 34-1 at 23.) GAIN relies on the PTAB trial statistics of CBM, inter partes review ("IPR")[1], and post grant review ("PGR")[2] petitions involving mechanical and business method patents, to argue the PTAB is likely (by an approximately 67% chance) to institute the CBM petitions on the Patents-in-Suit. (*Id.*) GAIN maintains the PTAB's final decisions, whether they invalidate or uphold the challenged claims, will provide useful guidance on analyzing the claim scope and the validity of the Patents-in-Suit. (*Id.* at 25–27.) GAIN argues, even though the PTAB denied institution of its CBM petitions, its Motion to Stay is not moot, because it may file a request for rehearing by the PTAB which would be due on April 19, 2021. (ECF No. 49 at 1.) OANDA contends the PTAB's trial statistics are divorced from the merits of GAIN's CBM petitions, making it speculative to conclude the mere filing of a CBM petition will simplify issues here. (ECF No. 36 at 7–8.) OANDA maintains the PTAB's denial to institute renders GAIN's Motion to Stay moot. (ECF No. 48 at 1.) OANDA insists the Court should not stay the case based on the remote possibility that the PTAB will grant a yet-to-be-filed motion for reconsideration. (ECF No. 50 at 1.) The Court does not find a stay is likely to simplify the issues.

---

[1] IPR is a trial proceeding conducted at the PTAB to review the patentability of one or more claims in a patent only on a ground that could be raised under 35 U.S.C. §§ 102 or 103. U.S. Pat. & Tm. Off., *Inter Partes Review*, uspto.gov, https://www.uspto.gov/patents-application-process/patent-trial-and-appeal-board/trials/inter-partes-review (last modified Sept. 4, 2020).

[2] PGR is a trial proceeding conducted at the PTAB to review the patentability of one or more claims in a patent on any ground that could be raised under 35 U.S.C. § 282(b)(2) or (3), U.S. Pat. & Tm. Off., *Post Grant Review*, uspto.gov, https://www.uspto.gov/patents-application-process/patent-trial-and-appeal-board/trials/post-grant-review (last modified Sept. 4, 2020).

The parties do not dispute the CBM review of the Patents-in-Suit, if undertaken by the PTAB, will simplify the issues and streamline the trial. However, the PTAB denied institution of all of GAIN's CBM petitions. "[W]hile it is possible that the PTAB will revise its decision on rehearing," the "number of rehearing requests that the PTAB grants" is "low."[3] *Ioengine, LLC v. Paypal Holdings, Inc.*, Nos. 18-452-WCB, 18-826-WCB, 2020 U.S. Dist. LEXIS 198388, at *11 (D. Del. Aug. 21, 2019). As a result, even though GAIN may file a request for rehearing, "[i]t does not appear that granting a stay as to the [Patents-in-Suit] would simplify the present litigation." *Hewlett-Packard Co. v. ServiceNow, Inc.*, No. 14-cv-00570-BLF, 2015 U.S. Dist. LEXIS 139383, at *6–7 (N.D. Cal. Oct. 13, 2015) ("[The defendant] has petitioned for rehearing of the PTAB's decisions not to institute IPR of the claims of those patents. However, [the defendant] has not cited, and the Court has not discovered, any authority suggesting that a petition for rehearing provides an adequate basis for granting a stay."); *see also MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, No. 14-cv-03657-SI, 2016 U.S. Dist. LEXIS 41553, at *5 (N.D. Cal. March 29, 2016) (rejecting the defendant's argument "that continuing the stay until the [PTAB] issues its rehearing decision will simplify the issues in this action," and concluding "the stay should be lifted").

Nevertheless, the PTAB's denial to institute IPR/CBM does not necessarily moot a motion to stay pending resolution of the IPR/CBM, if a request for rehearing may be filed. *See Lineweight LLC v. Firstspear, LLC*, No. 4:18-cv-00387-JAR, 2020 U.S. Dist. LEXIS 4766, *2–4 (E.D. Mo Jan. 6, 2020) (granting a stay due to the defendant's "inten[tion] to request a rehearing" of the PTAB's decision not to institute the IPRs of the patents-in-suit, because "the potential significant benefit" of simplifying the case if the PTAB reverses its denial of institution "offsets the relatively

---

[3] The PTAB trial statistics provided by GAIN is irrelevant here, because it does not touch on the success rate of reversing the PTAB's institution decision upon a rehearing.

short additional delay" pending resolution of the defendant's request for rehearing, and "such a delay would not unduly prejudice Plaintiffs"); *MLC Intellectual Prop.*, 2016 U.S. Dist. LEXIS 41553, at *2 ("On September 28, 2015, the Court granted [the defendant's] request to extend the continued stay . . . in view of the [PTAB's] pending decision on rehearing [its denial to institute IPR]."). The Court does not discern, and OANDA does not provide, any legal authority upholding a categorical rule against a stay in this particular situation. The Court must consider the remaining factors prescribed in AIA § 18(b)(1).

In conclusion, the first factor weighs against a stay.

## 2. The Timing Factor Favors A Stay

GAIN argues the preliminary stage of the present litigation weighs in favor of a stay, because no trial date has been set, and no discovery has occurred. (ECF No. 34-1 at 19.) GAIN stresses all that has transpired at this stage is the filing and service of OANDA's Complaint, GAIN's Motion to Dismiss, one status conference held on August 19, 2020, and the scheduling of another for October 13, 2020. (*Id.*) GAIN claims the COVID-19 pandemic has caused unprecedented challenges to the Court and the parties, which speaks against pushing forward with litigation under the current conditions, when the PTAB proceeding represents an alternative with fewer logistical challenges. (*Id.* at 22; ECF No. 38 at 16–17.) OANDA admits this case is in a relatively early stage, but contends it results from GAIN's delay tactics—including refusing consistently to engage in a Rule 26(f) conference and requesting a stay of discovery based on a Rule 12(b)(6) motion to dismiss—from which GAIN should not benefit. (ECF No. 36 at 9.) OANDA rejects the COVID-19 pandemic as a reason for stay, in light of GAIN's decision to pursue both a lawsuit and a CBM review during the pandemic. (*Id.* at 9.) The Court finds the second factor favors a stay.

The second factor focuses on timing, i.e., whether the "stage of litigation" at the relevant time favors a stay. *VirtualAgility Inc. v. Salesforce.com*, 759 F.3d 1307, 1315–16 (Fed. Cir. 2014). "Generally, the time of the motion is the relevant time to measure the stage of litigation." *Id.* at 1316. GAIN filed the Motion to Stay in mid-September 2020, which should be the relevant time to measure the stage of litigation. The parties do not dispute the nascent stage of this case at the relevant time, which favors a stay.

 "The coronavirus pandemic is also a relevant consideration under [the second] factor." *DivX, LLC v. Netflix, Inc.*, No. CV 19-1602 PSG (DFMx), 2020 U.S. Dist. LEXIS 100327, at *6 (C.D. Cal. May 11, 2020). But it is not a reason to favor a stay here. After all, it is still feasible to conduct discovery currently during the pandemic, and the parties may not avoid discovery if the PTAB institutes the CBM review. Also, though the Court is unlikely to resume civil jury trials anytime soon,[4] so is the completion of the parties' discovery.

Finally, GAIN's alleged delay tactics are not directly related to the stage of litigation, and will not be considered for the second factor. Nevertheless, they may support finding GAIN's dilative motive, and therefore will be considered for the third factor in the following.

Therefore, the second factor weighs in favor of a stay.

### 3.    The Undue Prejudice and Tactical Advantage Considerations Are Neutral

GAIN argues the fact that OANDA delayed in commencing this litigation and did not seek a preliminary injunction weighs in favor of a stay. (ECF No. 34-1 at 28–29.) GAIN claims OANDA waited several years after the two Patents-in-Suit were issued (in 2006 and 2013) before reaching out to GAIN regarding the Patents-in-Suit on October 25, 2018, and then waited more

---

[4] Criminal jury trials are anticipated to resume on June 1, 2021 in this Court. (Phase III Protocol, March 23, 2021).

than 18 months—during which there was a 15-month non-communication between the parties—

before filing the Complaint on May 11, 2020. (*Id.* at 29.) OANDA contends it would be prejudiced

by a stay, because GAIN is a direct competitor. (ECF No. 36 at 10.) The Court finds the third

factor is neutral.

A court may

> analyze[] whether a plaintiff would suffer undue prejudice (and
> whether a defendant would gain an unfair tactical advantage) if a
> stay is granted by examining four factors: (1) the timing of the
> request for reexamination; (2) the timing of the request for stay; (3)
> the status of reexamination proceedings; and (4) the relationship of
> the parties.

*Ever Win Int'l Corp. v. Radioshack Corp.*, 902 F. Supp. 2d 503, 508 (D. Del. 2012) (citations

omitted). Accordingly, the Court will consider all the above four factors, as well as other relevant

litigation practices of the parties, in the following analysis.

### a.    GAIN Has Not Exhibited A Dilatory Motive

Tactical advantage or undue prejudice can be evidenced by a dilatory motive on the

movant's part, which points against a stay. *See RetailMeNot, Inc. v. Honey Sci. LLC*, No. 18-937-

CFC-MPT, 2020 U.S. Dist. LEXIS 11210, at *16–17 (D. Del. Jan. 23, 2020) ("Because the timing

of [the movant's] request for [IPR] review arguably indicates a dilatory motive for tactical

advantage, this sub-factor weighs slightly against a stay."); *VirtualAgility*, 759 F.3d at 1319 (citing

*Market-Alerts Pty. Ltd. v. Bloomberg Fin. L.P.*, 922 F. Supp. 2d 486, 494–95 (D. Del. 2013))

("[T]he district court did not find that a stay would give Defendants a clear tactical advantage, and

we agree. There is no evidence that Defendants possessed a 'dilatory motive,' which would have

pointed against a stay."); *c.f. Arkema Inc. v. Honeywell Int'l, Inc.*, No. 10-cv-2886, 2013 U.S. Dist.

LEXIS 137216, at *13 (E.D. Pa. Sept. 25, 2013) ("Thus, as I find no dilatory motive, undue

prejudice or inappropriate litigation tactics attempting to gain a clear tactical advantage on the part

of [the movant], these factors weigh slightly in favor of a stay."). Here, GAIN has not exhibited a dilatory motive, which favors a stay.

First, GAIN had rational reasons for its refusal to follow OANDA's requests to engage in a Rule 26(f) conference. OANDA's requests were premature, when issue had not been joined and before the Court entered a Rule 16 Scheduling Order (ECF No. 28 at 1–3), which may set a timeline for a Rule 26(f) conference. *See* Fed. R. Civ. P. 26(f)(1) ("Except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B) or when the court orders otherwise, the parties must confer . . . at least 21 days before a scheduling conference is to be held or a scheduling order is due under Rule 16(b)."). The Court discerns no basis to find GAIN's refusal improper. *See Kone Corp. v. Thyssenkrupp USA, Inc.*, No. 11-465-LPS-CJB, 2011 U.S. Dist. LEXIS 109518, at *3 n.1 (D. Del. Sept. 26, 2011) (having no issue with the plaintiff's rejection of the defendant's suggestion "that the parties conduct a Rule 26(f) conference," when "[t]he Court has not yet scheduled a Rule 16 conference and no scheduling order has been entered").

Second, GAIN had rational reasons to request a stay of discovery. Discovery was premature upon GAIN's filing of the Motion to Stay, when issue had not been joined, GAIN had not filed an answer, and the initial scheduling conference had not been scheduled. (ECF No. 28 at 3–4.) Indeed, "the discovery process does not begin until after the initial scheduling conference, which is triggered by a defendant filing his answer to the plaintiff's complaint." *Conway v. Davis*, No. 1:16-cv-04511, 2018 U.S. Dist. LEXIS 47866, at *9 n.5 (D.N.J. March 23, 2018) (citations omitted). Also, "discovery in advance of issue being joined and a Rule 26(f) [conference] could prove to be counterintuitive." *O'Dwyer v. United States*, No. 06-10811, 2007 U.S. Dist. LEXIS 44341, at *4 (E.D. La. June 19, 2007).

Third, there was no significant delay in GAIN's filing of the CBM petitions and the Motion

to Stay. GAIN filed the Motion to Stay (1) only two days after filing the CBM petitions, which occurred approximately four months after OANDA commenced this litigation, (2) without missing a deadline set by the Court, and (3) while GAIN's Motion to Dismiss was still pending. Such a timeline does not indicate GAIN had a dilatory motive. *See Canfield Sci., Inc. v. Drugge*, No. 16-4636, 2018 U.S. Dist. LEXIS 98781, at *6 (D.N.J. Sept. 13, 2019) (refusing to find a dilatory motive on the plaintiff's part based on (1) "the approximately three-month delay between Plaintiff's assertion of its invalidity claim and the filing of its IPR petition," (2) "the less than two-month delay between the filing of the [IPR] petition and the present motion" to stay, and (3) the fact that the plaintiff filed the motion to stay within the deadline set by the court); *Ioengine, LLC v. PayPal Holdings, Inc.*, No. 18-452-WCB, 2019 U.S. Dist. LEXIS 141545, at *19 (D. Del. Aug. 21, 2019) (declining to find "a dilatory motive behind the timing of the" IPR, which was filed "before the Court ruled on the motion to dismiss" and after "a delay of six months from the filing of the complaint"); *VirtualAgility*, 759 F.3d at 1319–20 (Fed. Cir. 2014) (declining to find the defendant "possessed a 'dilatory motive,'" when the defendant "filed its CBM petition less than four months after [the plaintiff] instituted this infringement action and moved to stay the district court proceedings almost immediately after filing the petition"); *Landmark Tech., LLC v. iRobot Corp.*, No. 6:13cv411 JDL, 2014 U.S. Dist. LEXIS 16487, at *13 (E.D. Tex. Jan. 24, 2014) ("[F]iling of the motion to stay merely five months into the litigation does not appear to be dilatory."); *c.f. Eagle View Techs., Inc. v. Xactware Solutions, Inc.*, No. 15-7025, 2016 U.S. Dist. LEXIS 169038, at *11 (D.N.J. Dec. 7, 2016) ("[A]n inference could be drawn that defendants are seeking an inappropriate tactical advantage because they waited until their motion to dismiss was denied to file their present motion to stay.").

Therefore, the Court discerns no basis to find a dilatory motive on the part of GAIN.

### b.      The Unduly Prejudice Consideration Disfavors a Stay

First, OANDA admits "the delays that would result from the stay are simply the inherent delays of the reexamination process" (ECF No. 36 at 10), which "are insufficient to establish undue prejudice." *Nasdaq, Inc. v. Miami Int'l Holdings*, *Inc.*, No. 17-6664, 2018 U.S. Dist. LEXIS 135193, at *12 (D.N.J. Aug. 10, 2018) (citations omitted).

Second, OANDA admits it "has not sought a preliminary injunction," which is a "countervailing consideration[]" for finding undue prejudice. (ECF No. 36 at 10.) OANDA never explains why it chose not to do so. Also, after sending an initial warning to GAIN concerning potential infringement of the Patents-in-Suit, OANDA waited 18 months before commencing this litigation. This is a prolonged delay for which OANDA offers no justification. Such unexplained inaction and delay cut against finding undue prejudice on OANDA's part. *See VirtualAgility*, 759 F.3d at 1319 (finding the plaintiff's failure to justify its (1) decision not to pursue a preliminary injunction and (2) one-year delay in filing the patent infringement action "weigh[ed] against [the plaintiff's] claims that it w[ould] be unduly prejudiced by a stay").

Third, that the parallel "CBM review is in its early stages . . . weighs against granting a stay." *Market-Alerts Pty. Ltd. v. Bloomberg Fin. L.P.*, 922 F. Supp. 2d 486, 495 (D. Del. 2013). Here, the PTAB denied institution of GAIN's CBM petitions, for which GAIN may request a rehearing. Though GAIN has a deadline on April 19, 2021 to submit the request, the time the PTAB would take to resolve it is uncertain. If the PTAB later reverses its denial and institutes the CBM review, it may take an additional year or more before the PTAB makes a final decision.[5]

---

[5] "[T]he final determination in any post-grant review [shall] be issued not later than 1 year after the date on which the Director notices the institution of a proceeding, except that the Director may, for good cause shown, extend the 1-year period by not more than 6 months." 35 U.S.C. § 326(a)(11).

Therefore, the CBM proceeding here is in its early stages, which weighs against a stay. *See Straight Path IP Group, Inc. v. Vonage Holdings Corp.,* No. 14-502, 2014 U.S. Dist. LEXIS 121328, at *6–7 (D.N.J. Aug. 28, 2014) (citing *Davol, Inc. v. Atrium Med. Corp.*, No. 12-958, 2013 U.S. Dist. LEXIS 84533, at *7 n.3 (D. Del. June 17, 2013)) (finding "the early stage of the review proceedings [may] result in undue prejudice," because "the fact that the review proceedings are in their infancy forces the non-moving party to wait not only for a PTO decision on the challenged claims but also for the preliminary decision on whether to even hear the challenge"); *Arkema Inc. v. Honeywell Int'l, Inc.*, No. 10-cv-2886, 2013 U.S. Dist. LEXIS 137216, at *16 (E.D. Pa. Sept. 25, 2013) ("Using the statistics provided by the PTO itself, it is much more likely that the parties will wait longer than a year for certificates to issue for the two remaining patents. Thus, the stage of the reexaminations supports a denial of a stay."); *Id.* (concluding, in a court opinion dated February 5, 2013, "the CBM review [wa]s in its early stages and [] this particular consideration weighs against granting a stay," because "the PTO may not decide to grant the petition for CBM review . . . until April 2013," and, "if review [wa]s granted, a decision may not be issued until April 2014").

Fourth, "courts are hesitant to stay patent cases when direct market competitors are involved." *Miami Int'l Holdings*, 2018 U.S. Dist. LEXIS 135193, at *12 (citations and internal quotations omitted). "[W]hen parties are directly competing and the landscape of the relevant market is changing, it presents a circumstance where justice demands that the allegedly aggrieved party be given an opportunity to litigate its claims-and sooner rather than later." *Id.* at *13. "Competition between parties can weigh in favor of finding undue prejudice." *VirtualAgility*, 759 F.3d at 1318. These considerations favor a stay here. GAIN recognizes OANDA as one of its "main competitors" in both the U.S. and the international markets for its retail services, which

represent 76.0% of GAIN's net revenue. Gain Capital Holdings, Inc., Annual Report (Form 10-K) 6, 8 (Mar. 16, 2020). In particular, GAIN conducts a part of its retail business through www.forex.com, *id.* at 6, which allegedly contains instrumentalities that infringe the Patents-in-Suit. (ECF No. 1 ¶¶ 66, 70.) Furthermore, GAIN's operations are subject to the risk of market volatility. Gain Capital Holdings, Inc., Annual Report (Form 10-K) 4, 17 (Mar. 16, 2020). Such direct competition between GAIN and OANDA in a volatile market cuts against a stay.

On balance, the undue prejudice consideration weighs against a stay. However, because GAIN is not shown to have a dilatory motive, the Court finds the third factor to be neutral.

### 4.    A Stay Is Unlikely to Reduce the Burden of Litigation

GAIN argues a stay would prevent the parties from engaging in potentially unnecessary and costly discovery, particularly to the extent any claims of the Patents-in-Suit are canceled or amended during the CBM proceedings. (ECF No. 34-1 at 30.) GAIN stresses the purpose of the CBM review is to reduce the burden of litigation, which indicates a stay is warranted. (*Id.*) The Court disagrees.

The Court does not discern, and the parties do not allege, any deadline for the PTAB to resolve a request for rehearing on a denial of institution. Therefore, if a stay is granted, it would be unpredictable as to when the Court may hear this case, in light of a possible institution of CBM review. Such an uncertainty creates a burden for the Court's case scheduling. Further, "while it is possible that the PTAB will revise its decision on rehearing," the "number of rehearing requests that the PTAB grants" is "low." *Ioengine, LLC v. Paypal Holdings, Inc.*, Nos. 18-452-WCB, 18-826-WCB, 2020 U.S. Dist. LEXIS 198388, at *11 (D. Del. Aug. 21, 2019). In other words, the potential benefit of a stay in reducing the burden of litigation is not significant. Accordingly, the fourth factor disfavors a stay.

In summary, the first and the fourth factors weigh against a stay, the second factor favors a stay, and the third factor is neutral. Because the second factor is "not of significant weight" in the motion to stay inquiry, *Smartflash LLC v. Apple Inc.*, 621 F. App'x 995, 1002 (Fed. Cir. 2015), and because "[t]he fact that the PTAB has issued its decision has a very important impact on the balance of factors," *Ioengine*, 2020 U.S. Dist. LEXIS 198388, at *10, the Court concludes the four factors on balance disfavor a stay. GAIN's Motion to Stay is therefore denied.

### D.    Motion to Dismiss

#### 1.    OANDA's Direct Infringement Claim Is Partially Viable

##### a.    The Court Accepts GAIN's Website as a Discrete Product

GAIN maintains OANDA's Complaint fails to identify which of GAIN's variety of services and platforms available at www.forex.com allegedly infringes the Patents-in-Suit, and therefore cannot meet the *Twombly/Iqbal* pleading standard. (ECF No. 24-1 at 14.) GAIN argues www.forex.com cannot be a discrete accused product, because it contains multiple software platforms and services. (ECF No. 33 at 6.) OANDA contends it has identified a product, i.e., www.forex.com, through which GAIN offers an infringing online currency trading platform. (ECF No. 32 at 7.) OANDA claims any suggestion that the website is not really a product is contradicted by GAIN's own filings with the SEC, which describe www.forex.com as GAIN's "proprietary platform." (*Id*. at 8.) OANDA also claims the status of the website is a factual question, which cannot be resolved on a Rule 12(b)(6) motion. (*Id*.) The Court agrees.

"[A] complaint sufficiently pleaded direct infringement where (1) it named the accused product; (2) in each count, it 'described the alleged infringement'; and (3) identified how the accused product infringed on every element of at least one claim in each of the plaintiff's patents." *NovaPlast Corp. v. Inplant, LLC*, No. 20-7396, 2021 U.S. Dist. LEXIS 21263, at *17 (D.N.J. Feb.

3, 2021) (citing *Nasdaq, Inc. v. IEX Grp., Inc.*, No. 18-3014, 2019 U.S. Dist. LEXIS 1626, 2019 WL 102408, at *9 (D.N.J. Jan. 4, 2019)).

Here, the issue focuses on whether OANDA's Complaint has named an accused product. GAIN does not deny its SEC filing could be read to describe www.forex.com as a discrete product. (ECF No. 33 at 9.) To the extent that GAIN's SEC filing may also have described the website as containing "various platforms" (*id.*), it creates a factual dispute as to the website's nature, i.e., whether it should be characterized as a discrete product or a collection of different products. Such a dispute must be resolved in the light most favorable to OANDA at the pleading stage. Therefore, the Court must accept as true OANDA's factual allegation that the website is a discrete product. As a result, the Court declines to dismiss OANDA's Complaint for merely identifying www.forex.com as the infringing product.[6]

### b.     The Complaint Is Partially Deficient in Identifying How GAIN's Product Allegedly Infringes Each Claim of the Patents-in-Suit

GAIN contends OANDA fails to identify how any single GAIN product allegedly infringes any claim of the Patents-in-Suit, because OANDA mixes-and-matches screenshots from different products for a single patent claim. (ECF No. 24-1 at 14.) GAIN maintains OANDA's screenshots cannot identify how or why each component of any accused product allegedly infringes the Patents-in-Suit, because (1) most of the claim elements of the Patents-in-Suit relate to backend functionalities, whereas the screenshots show only the frontend user interface for various webpages and applications, and (2) OANDA provides no explanation to give any context for the

---

[6] Because the Court accepts GAIN's website as a discrete product, it is not necessary to consider GAIN's Customer Agreement, which OANDA argues is another proof that the website is a discrete platform. (ECF No. 37-1 at 2.) Therefore, as this point, the Court declines to address OANDA's motion for leave to file sur-reply, which purports to introduce the Customer Agreement for the above argument. (ECF No. 37.)

screenshot. (*Id.* at 17.) GAIN admits OANDA provides a narrative that better describes the alleged infringement in the opposition brief, but stresses this narrative outside of the pleadings cannot save the Complaint at this stage. (ECF No. 33 at 12.) OANDA asserts it has provided claim charts with screenshots from www.forex.com to demonstrate how the website, the accused product, infringes. (ECF No. 32 at 9, 11.) OANDA insists, at the pleading stage and without the benefit of discovery, it should not be required to identify how GAIN's non-public backend functionalities work. (*Id.* at 11.) OANDA suggests the screenshots may give rise to a plausible inference that GAIN's trading platform contains certain backend functionalities. (*Id.* at 12.) The Court finds OANDA's Complaint is partially deficient.

"To state a claim for direct infringement, a plaintiff must list the defendant's products that allegedly infringe, describe the alleged infringement, and relate 'factual assertions to the pertinent claims' in its patent." *Batinkoff v. Church & Dwight Co.*, No. 3:18-cv-16388, 2020 U.S. Dist. LEXIS 55601, at *39 (D.N.J. March 31, 2020) (citing *Robern, Inc. v. Glasscrafters, Inc.*, 206 F. Supp. 3d 1005, 1011 (D.N.J. 2016)). "The complaint must allege that the accused product infringes on 'each and every element of at least one claim' of the plaintiff's patents 'either literally or equivalently.'" *Id.* at *39–40 (citing *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018)). Therefore, screenshots alone may adequately allege how a product infringes a patent claim, if they entail adequate descriptions that relate to each and every element of the claim. OANDA may "use a table in which the language of each claim from the [Patents-in-Suit] appear in one box while" screenshots of www.forex.com showing how it "infringes that claim appear in an adjoining box." *Id.* at *40.

However, some of the screenshots in the Complaint fail to clarify how each element of the claim corresponds to the component(s) in the screenshots. The Complaint does not cure this

deficiency with supplementary explanations. Such a deficiency exists in the screenshots for the following patent claims. First, Claim 1(e) of the '336 patent involves "a pricing engine" and "an interest rate manager" (ECF No. 1-4 at 6), but nothing in the adjoining three screenshots identifies which of them or which component(s) of them corresponds to such pricing engine or interest rate manager (*see id.* at 7–8). Second, Claim 7(e) of the '336 patent involves "a pricing engine" and "a hedging engine" (*id.* at 16), but nothing in the adjoining four screenshots identifies which of them or which component(s) of them corresponds to such pricing engine or hedging engine (*see id.* at 16–17). Third, Claim 9 of the '336 patent involves trading models that comprise six components, i.e., a price collector component, a price filter component, a price database component, a gearing calculator component, a deal acceptor component, and a bookkeeper component (*id.* at 19–20), but the adjoining screenshot does not indicate a trading model, not to mention the above six components; the screenshot only depicts certain market patterns (*see id.* at 20). Fourth, Claim 10 of the '336 patent involves trading models that comprise seven components, i.e., a price collector component, a price filter component, a price database component, a gearing calculator component, a deal acceptor component, an opportunity catcher component, and a bookkeeper component (*id.* at 21), but the adjoining screenshot does not indicate a trading model, not to mention the above seven components; the screenshot only depicts a user's automation of its trading strategies and certain benefits available to high-volume users (*see id.*). The above screenshots "do[] not go through each limitation" of the patent claim they purport to relate to, and therefore "fails to allege factually that each and every element of [a] claim is met." *NovaPlast*, 2021 U.S. Dist. LEXIS 21263, at *19–20.

Finally, the Court does not find other aspects of the Complaint deficient in stating a direct infringement claim. First, the Court cannot conclude the Complaint contains mixing and matching

of screenshots from different products. The screenshots were all accessed from www.forex.com (ECF No. 32 at 11), which the Court accepts as a single infringing product. Second, the Court declines to find the Complaint deficient for failing to specify how GAIN's product infringes the backend functionalities claimed in the Patents-in-Suit, because OANDA "would need to take discovery to identify the allegedly infringing back-end products, systems, or methods." *Eclipse IP, LLC v. Paybyphone Techs.*, No. CV 14-154-GW(AJWx), 2014 U.S. Dist. LEXIS 200554, at *10 (C.D. Cal. April 24, 2014) (citing *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1286 (Fed. Cir. 2013)) (finding the plaintiff's "allegations are sufficiently specific to put [the defendant] 'on notice of what activity or device is being accused of infringement'"). At this stage of the litigation, the Court will not require OANDA to allege such non-public information as website's bank-end functionalities. *See Nasdaq, Inc. v. IEX Grp., Inc.*, No. 18-3014, 2019 U.S. Dist. LEXIS 1626, at *35 (D.N.J. Jan. 4, 2019) (citing *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1358 (Fed. Cir. 2007)) ("To the extent [the defendant] argues the Complaint does not specify the precise methods [the defendant] use[d] in its infringing device, at this stage of the litigation, all [the plaintiff] has access to is [the defendant's] public statements, which it used to fashion the Complaint. The specifics of how [the defendant's] purportedly infringing device works is something to be establish through discovery."). It is sufficient that the Complaint shows GAIN's product plausibly contains the backend functionalities claimed in the Patents-in-Suit, and this plausibility pleading standard is met here. After all, these backend functionalities were all developed for currency trading over a computer network, as covered by the Patents-in-Suit. It is therefore plausible that www.forex.com, an operable online currency trading platform which allegedly contains the frontend user interface features (e.g., database, transaction server, and rate server) claimed in the Patents-in-Suit, is also equipped with the claimed backend functionalities

that are necessary to enable such features.

Accordingly, the OANDA's direct infringement claim is viable, except for its allegation of GAIN's infringement of Claims 1, 7, 9, and 10 of the '336 patent.

### 2. OANDA's Induced Infringement Claim Is Not Viable

GAIN contends OANDA fails to plausibly plead an induced infringement claim, because the Complaint does not allege (1) direct infringement by a third party, (2) GAIN specifically intended others to infringe, (3) how GAIN induced infringement, and (4) GAIN possessed actual knowledge of its customers' infringement. (ECF No. 24-1 at 19–20.) GAIN maintains OANDA's October 25, 2018 letter did not name a single product or accuse any GAIN product, platform, or service of infringement, and therefore cannot show GAIN knew of any infringement. (ECF No. 33 at 14–15.) OANDA counters it has alleged GAIN caused certain third parties (including subcontractors, managers, and agents) to operate or assist in the management of its infringing online trading system, and offered its system to certain third parties as a "white-label" product for creating their own infringing trading platform(s). (ECF No. 32 at 14.) The Court disagrees.

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). A plaintiff asserting an induced infringement claim "must plead facts raising a plausible inference that: '(1) Defendants knowingly induced a third party to perform specific acts; (2) Defendants specifically intended for the induced acts to infringe the asserted patents; and (3) as a result of the inducement, the third party directly infringed the asserted patents.'" *IEX Grp.*, 2019 U.S. Dist. LEXIS 1626, at *36 (citing *Straight Path IP Grp., Inc. v. Vonage Holdings Corp.*, No. 14-502, 2014 U.S. Dist. LEXIS 92626, 2014 WL 3345618, at *2 (D.N.J. July 7, 2014)). The induced infringement claim "premises liability upon purposeful, culpable expressions and conduct" and "clear expression or other affirmative steps taken to foster infringement" by third parties,

which are needed to meet "the state of mind requirement for inducement," including possessing a "specific intent to encourage another's infringement." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (citations omitted). The relevant inducement inquiry is whether the alleged infringer gave "instructions" to "'actively teach an infringing use of the product such that courts can infer from those instructions an affirmative intent' that the product be used to infringe." *Otsuka Pharm. Co., LTD. v. Torrent Pharms. Ltd., Inc.*, 99 F. Supp. 3d 461, 484 (D.N.J. 2015) (citing *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1329 n.2 (Fed. Cir. 2009)).

Here, the Complaint does not allege any active step taken by GAIN to encourage or instruct direct infringement that may indicate a specific intent of inducing infringement. The Complaint fails to even mention such a specific intent. OANDA's allegation that GAIN caused others to infringe the Patents-in-Suit is insufficient to show a specific intent, which "requires more than just intent to cause the acts that produce direct infringement." *Kyocera Wireless Corp. v. ITC*, 545 F.3d 1340, 1354 (Fed. Cir. 2008) (citing *DSU*, 471 F.3d at 1306). GAIN's alleged knowledge of its infringement of the Patents-in-Suit is also insufficient to infer a specific intent, which "can be shown by circumstantial evidence, but the mere knowledge of possible infringement will not suffice." *Vita-Mix*, 581 F.3d at 1328 (citing *DSU*, 471 F.3d at 1305–06). Therefore, without pleading facts raising a plausible inference of GAIN's specific intent, OANDA's induced infringement claim is not viable.

### 3. OANDA's Contributory Infringement Claim Is Not Viable

GAIN argues OANDA fails to assert a contributory infringement claim, because OANDA does not allege (1) GAIN knew a specific product was infringing the Patents-in-Suit, (2) GAIN's contributory activity had no non-infringing substitute, and (3) a plausible third-party's direct infringement. (ECF No. 24-1 at 20–21.) GAIN also contends OANDA fails to allege GAIN's

accused products are a material component of a patented invention, or especially made or adapted to infringe that patent.  (ECF No. 33 at 16.) OANDA insists it has adequately alleged all the elements of a contributory infringement claim. (ECF No. 32 at 15.) The Court disagrees.

Contributory infringement occurs if one "offers to sell or sells . . . a component of a patented . . . combination, . . . or a material . . . for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use." 35 U.S.C. § 271(c). "To state a claim for contributory infringement . . . a plaintiff must, among other things, plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses." *Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App'x 934, 938 (Fed. Cir. 2015) (citing *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1337 (Fed. Cir. 2012)). "A substantial noninfringing use is any use that is 'not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental'" and is "for purposes other than infringement." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1357 (Fed. Cir. 2018) (citations omitted).

Here, OANDA's Complaint "contains no allegations regarding substantial non-infringing uses," which compels "dismissal of the indirect infringement claim," *Addiction & Detoxification*, 620 F. App'x at 938, even if it may have "pled adequately that [GAIN's product] is inherently infringing." *Nexeon Ltd. v. Eaglepicher Techs.*, No. 15-955-RGA-MPT, LLC, 2016 U.S. Dist. LEXIS 96995, at *18 (D. Del. July 26, 2016) (concluding the plaintiff's "contributory infringement claims are inadequate," because the plaintiff "has not sufficiently pled facts demonstrating a lack of substantial non-infringing uses"). In particular, the Complaint "refer[s] to the [the defendant's] platform as a whole without identifying how any component part of the [defendant's] platform has

'no substantial non-infringing uses,'" which warrants "granting [a] motion to dismiss [the] contributory infringement claim." *Uniloc 2017, LLC v. ZenPayroll, Inc.*, No. 19-1075-CFC-SRF, 2020 U.S. Dist. LEXIS 130261, at *16 (D. Del. July 23, 2020) (citing *Artrip v. Ball Corp.*, 735 F. App'x 708, 713 (Fed. Cir. 2018)). OANDA has not even "affirmatively plead[ed] the absence of substantial non-infringing uses," which may be sufficient for asserting a contributory infringement claim "if the pleadings do not undermine that allegation." *Merck Sharp & Dohme Corp. v. Teva Pharms. USA, Inc.*, No. 14-874-SLR-SRF, 2015 U.S. Dist. LEXIS 85279, at *20 (D. Del. July 1, 2015). Therefore, OANDA's contributory infringement claim is not viable.

### 4.   OANDA's Willful Infringement Claim Is Viable

GAIN maintains OANDA's allegations of willful infringement are inadequate, because OANDA does not adequately plead that GAIN knew about OANDA's patents at the time of the challenged conduct. (ECF No. 24-1 at 23.) GAIN claims OANDA's October 25, 2018 letter failed to identify any GAIN product or accuse any GAIN product of infringement, and therefore GAIN did not and could not know which products allegedly infringed the Patents-in-Suit. (ECF No. 33 at 17–18.) GAIN asserts OANDA never alleged facts that could suggest GAIN's conduct rose to the level of egregiousness. (ECF No. 24-1 at 24.) GAIN argues its conduct was far from egregious, because, rather than declining a license, GAIN reached out to OANDA after receiving the October 25, 2018 letter, but heard no response from OANDA for over a year. (*Id.*) OANDA counters it had adequately pleaded GAIN's willful infringement, by alleging it notified GAIN by a letter dated October 25, 2018 as to GAIN's infringement, which continued after GAIN received the letter. (ECF No. 32 at 16.) The Court agrees.

"[W]here a complaint permits an inference that the defendant was on notice of the potential infringement and still continued its infringement, the plaintiff has pled a plausible claim of willful

infringement." *Nasdaq, Inc. v. IEX Grp., Inc.*, No. 18-3014, 2019 U.S. Dist. LEXIS 1626, at *40 (D.N.J. Jan. 4, 2019) (citing *Kyowa Hakka Bio, Co. v. Ajinomoto Co.*, No. 17-313, 2018 U.S. Dist. LEXIS 22392, 2018 WL 834583, at *13 (D. Del. Feb. 12, 2018)); *see also Telebrands Corp. v. Everstar Merch. Co.*, No. 17-2878, 2018 U.S. Dist. LEXIS 13960, at *21 (D.N.J. Jan. 29, 2018) (allowing the plaintiffs to "amend their pleading to allege that Defendants willfully violated the" patent-in-suit, based on the plaintiffs' allegation "that Defendants have had notice of the [patent-in-suit] since their receipt of the [original complaint] in this matter, and yet still created and sold the allegedly infringing" products); *Depomed, Inc. v. Purdue Pharma L.P.*, No. 13-571, 2017 U.S. Dist. LEXIS 12967, at *11 (D.N.J. Jan. 31, 2017) ("[The plaintiff's] second amended complaint sufficiently plead a claim for willful infringement in that [the plaintiff] plead that the patents-in-suit were brought to [the defendant's] attention and that [the defendant] disregarded the risk of infringement by continuing it infringing activities after receiving said notice from [the plaintiff].").

OANDA, in its October 25, 2018 letter to GAIN, indicated GAIN's currency trading products and services might be infringing the Patents-in-Suit. (ECF No. 24-3 at 2.) OANDA's Complaint alleged GAIN's continued infringement of the Patents-in-Suit after receiving the letter. (ECF No. 1 at ¶ 79.) Therefore, OANDA's Complaint permits an inference that GAIN was on notice of the potential infringement and still continued its infringement. This is sufficient for pleading a plausible claim of willful infringement. A showing of egregiousness of GAIN's alleged infringement is not necessary at the pleading stage. *IEX Grp.*, 2019 U.S. Dist. LEXIS 1626, at *39 (citations omitted) ("[B]road allegations of willfulness without a specific showing of egregiousness have been enough to withstand a motion to dismiss."); *see also Align Tech., Inc. v. 3Shape A/S*, 339 F. Supp. 3d 435, 448 (D. Del. 2018) (declining to "require allegations of egregiousness at the pleading stage" for a willful infringement claim). Also, the Court does not

discern, and GAIN does not provide, any binding legal authority holding a complaint must allege a particular infringing product to assert a willful infringement claim. Instead, "the pleading requirement for willful infringement does not rise to the stringent standard required by Rule 9(b)," under which "circumstances constituting fraud or mistake shall be stated with particularity." *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1343 (Fed. Cir. 2003) (citations omitted).

If anything about an accused product must be pleaded, OANDA's Complaint is sufficient in suggesting GAIN should have known how www.forex.com may have infringed the Patents-in-Suit. *See Batinkoff v. Church & Dwight Co.*, No. 3:18-cv-16388, 2020 U.S. Dist. LEXIS 55601, at *50 (D.N.J. March 31, 2020) (citing *Välinge Innovation AB v. Halstead New England Corp.*, No. 16–1082–LPS–CJB, 2018 WL 2411218, at *13 (D. Del. 2018)) (dismissing a willful infringement claim "because Plaintiffs have not sufficiently pleaded facts to support a determination [that the defendant] knew or should have known how it is that [the defendant's product] infringed Plaintiffs' [] patent").[7] Here, the October 25, 2018 letter indicated GAIN's currency trading products and services might be infringing the Patents-in-Suit. This suggests GAIN should have the pre-suit knowledge of whether and how www.forex.com, its major currency

---

[7] *Batinkoff* is distinguishable here, because the parties in *Batinkoff* did not dispute the identity of the alleged infringing product. *See Batinkoff*, 2020 U.S. Dist. LEXIS 55601. In other words, whether a plaintiff, in asserting a willful infringement claim, must allege a specific infringing product was not an issue in *Batinkoff*. The *Batinkoff* court dismissed a willful infringement claim, because the plaintiff only alleged a pre-suit contact with the defendant that showed the defendant knew of the plaintiff's patent, but that contact did not inform the defendant of its potential infringement of the patent. *Id.* at *49–50. The Court does not read *Batinkoff* as requiring a plaintiff, in asserting a willful infringement claim, to identify a particular infringing product or explain in detail how the product infringes the plaintiff's patent. Neither did *Välinge*. *See Välinge*, 2018 WL 2411218, at *13 (concluding, to assert a willful infringement claim, the complaint must "plausibly demonstrate that the accused infringer not only knew of the patent-in-suit, but also knew or should have known that what it was doing (and what it continued to do) amounted to infringement of that patent").

trading platform, may have infringed the Patents-in-Suit. After all, GAIN could have conducted a due diligence investigation of potential infringement of the Patents-in-Suit, which were already published when GAIN received the letter. Accordingly, OANDA's willful infringement claim is viable.

In summary, the Court dismisses without prejudice OANDA's Complaint as to Count I, to the extent it is based on GAIN's alleged infringement of Claims 1, 7, 9, and 10 of the '336 patent, and Count III. The Court grants OANDA 60 days to amend its Complaint. The remaining portion of the Complaint will not be dismissed.

## IV.   CONCLUSION

For the reasons set forth above, GAIN's Motion to Stay is **DENIED**, and GAIN's Motion to Dismiss is **GRANTED IN PART and DENIED IN PART**. The Court dismisses without prejudice OANDA's Complaint as to Count I, to the extent it is based on GAIN's alleged infringement of Claims 1, 7, 9, and 10 of the '336 patent, and Count III. OANDA has 60 days to file an amended complaint, and failure to do so will turn dismissals without prejudice into dismissals with prejudice. An appropriate order follows.


**Date: March 30, 2021**                    */s/ Brian R. Martinotti*
                                             **HON. BRIAN R. MARTINOTTI**
                                             **UNITED STATES DISTRICT JUDGE**