<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

**OANDA CORPORATION**

Plaintiff,

v.

**GAIN CAPITAL HOLDINGS, INC.,** *et al.***,**

Defendants.

Civil Action No. 20-5784 (ZNQ) (JTQ)

**CLAIM CONSTRUCTION
OPINION & ORDER**

<u>**QURAISHI, District Judge**</u>

In this claim construction Opinion and Order, the Court construes disputed claim terms in two patents that are directed to systems and methods for currency trading. The parties submitted the following briefs: Opening Brief ("POB," ECF No. 105) filed by Plaintiff OANDA Corporation ("OANDA" or "Plaintiff"), Opening Brief ("DOB," ECF No. 106) filed by Defendants Gain Capital Holdings Inc. ("Holdings") and Gain Capital Group, LLC ("Capital") (collectively, "Defendants"); Plaintiff's Responsive Brief ("PRB," ECF No. 109) and Defendants' Responding Brief ("DRB," ECF No. 110). After reviewing the parties' submissions and conducting a *Markman* hearing on October 6, 2022, the Court construes the disputed terms as set forth herein.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

   **A.    The Parties**

OANDA is the owner, by assignment, of U.S. Patent Nos. 7,146,336 (the '336 Patent) and 8,392,311 (the '311 Patent) (together, "the Patents.")[1]  (Amended Complaint ("FAC") ¶ 3, ECF No. 59.)  The Amended Complaint alleges that the Patents teach methods and systems that solve

---

[1] The '311 Patent is a continuation of the '336 Patent. Accordingly, the two patents share a common specification.

1

the deficiencies of then-existing online currency trading, such as allowing for execution of online currency transactions with only two communications instead of the "three-way handshake," thereby eliminating the previous problems with timing lags, and providing built-in automated protections against price fluctuations. (*Id.* ¶ 19.)

Capital is a Delaware LLC located in New Jersey. (*Id.* ¶ 5.) Capital owns and operates the website https://forex.com that "provides foreign exchange ('forex' or 'FX') trading and brokerage services, including an online trading platform that infringes the claims of the patents in suit." (*Id.* ¶ 6.)

Holdings is a Delaware corporation that shares its address in New Jersey with Capital. (*Id.* ¶ 4.) Holdings owns and operates the website https://www.gaincapital.com, and uses the services of Capital "including the application programming interfaces (APIs) provided by https://forex.com, to operate automated trading platform(s)." (*Id.* ¶ 7.)

**B.    Procedural History**

Plaintiff filed a Complaint against Defendants on May 11, 2020. (ECF No. 1.) Defendants filed a Motion to Dismiss on July 17, 2020. (ECF No. 24.) Defendants also filed a Motion to Stay this action pending resolution of petitions for Covered Business Method (CBM) Review that they had previously filed with the Patent Trial and Appeals Board ("PTAB"). (ECF No. 34.) In a single decision, the Court denied the Motion to Stay, and granted in part and denied in part the Motion to Dismiss. (ECF No. 52.) The PTAB later declined to institute CBM Review of the Patents. (ECF Nos. 48-1, 48-2.)

Plaintiff filed a First Amended Complaint on April 20, 2021 that alleges infringement of the Patents, as well as contributory or induced infringement and willful infringement. (FAC ¶¶ 21–25.) More specifically, Plaintiff alleges that Defendants have infringed one or more claims of the Patents by making, using, selling, offering for sale, or selling products and/or services, and that Capital has made, used, sold, and offered for sale infringing instrumentalities at https://forex.com,

2

and Holdings has used those infringing instrumentalities, including the application programming interfaces ("APIs"), to operate automated infringing trading systems. (*Id.* ¶¶ 66, 72.)

## II.  JURISDICTION

Based on Plaintiff's claims for patent infringement, the Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338.

## III.  LEGAL STANDARD

A patent infringement case involves two steps: construing the claims and determining whether the accused product infringes the claims.  *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996); *Hormone Research Found., Inc. v. Genentech, Inc.*, 904 F.2d 1558, 1562 (Fed. Cir. 1990), *cert. dismissed*, 499 U.S. 955 (1991).

Claim construction is primarily a question of law.  *See Teva Pharm. U.S.A., Inc. v. Sandoz, Inc.*, 574 U.S. 318, 325–26 (2015).  It begins with the claim language.  *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.,* 381 F.3d 1111, 1115 (Fed. Cir. 2004); *Markman,* 52 F.3d at 980. Claim language is generally "given [its] ordinary and customary meaning."  *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("[W]e look to the words of the claims themselves . . . to define the scope of the patented invention."); *see also Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001) ("In construing claims, the analytical focus must begin and remain centered on the language of the claims themselves, for it is that language that the patentee chose to use to 'particularly point [] out and distinctly claim[] the subject matter which the patentee regards as his invention.'") (quoting 35 U.S.C. § 112).  Ordinary meaning is determined by "a person of ordinary skill in the art in question at the time of the invention."[2]  *Phillips v. AHW Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc) (collecting cases); *Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1298 (Fed. Cir. 2003).

---

[2] The parties disagree on the proper definition of a person of ordinary skill in the art, but conceded at oral argument that the Court need not decide that issue for the purposes of claim construction.  *See* Markman Tr., at 31:6–25.

However, if a patentee has used the claim language in some manner other than its ordinary meaning, as indicated by the balance of intrinsic evidence, such as the specification, then that meaning controls. *See, e.g.*, *Phillips*, 415 F.3d at 1226; *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1366 (Fed. Cir. 2001); *Allen Engineering Corp. v. Bartell Industries, Inc.*, 299 F.3d 1336, 1344 (Fed. Cir. 2002) ("It is thus necessary to review [intrinsic evidence] to determine whether the patentee has assigned any special meaning to claim terms.").

Because "there is no magic formula or catechism" for determining ordinary meaning, nor a "rigid algorithm" or "specific sequence," *Phillips*, 415 F.3d at 1324, a court must read claims in context. *See Medrad Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005) ("We cannot look at the ordinary meaning of the term . . . in a vacuum."); *see also DeMarini Sports, Inc. v. Worth*, 239 F.3d 1314, 1324 (Fed. Cir. 2001). To this end, a court must consider "the written description and prosecution history," *Medrad*, 401 F.3d at 1319, "the specification," *Phillips*, 415 F.3d at 1313, which is "always highly relevant to the claim construction analysis," *Vitronics*, 90 F.3d at 1582, because it "may reveal whether the patentee has used a term in a way different from its plain meaning," *Brookhill-Wilk*, 334 F.3d at 1298, and "the surrounding words of the claim." *ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003).

Even "[o]ther claims of the patent in question, both asserted and unasserted, can [] be valuable sources of enlightenment as to the meaning of a claim term." *Vitronics*, 90 F.3d at 1582. In short, the "entire patent" matters, *Phillips*, 415 F.3d at 1313; *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998), and "[t]he construction that stays true to the claim language" while "most naturally align[ing] with the patent's description of the invention will be, in the end, the correct construction." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998).

In addition to "the words of the claims themselves, the remainder of the specification, [and] the prosecution history," a court may also consider "extrinsic evidence concerning relevant

4

scientific principles, the meaning of technical terms, and the state of the art." *Innova*, 381 F.3d at 1116; *see also Gemstar-TV Guide Int'l, Inc. v. Int'l Trade Comm'n,* 383 F.3d 1352, 1364 (Fed. Cir. 2004).

IV.  **DISCUSSION**

The parties' briefing addresses six claim terms, which the Court considers below.

A.   **Term 1: "in communication with"**

The parties' first term for construction is "in communication with." The term is used repeatedly in several of the claims of the '336 Patent. For example, claim 1 of the '336 Patent recites:

> 1. A system for trading currencies over a computer network, comprising:
>
> (a) a server front-end *in communication with* said computer network;
>
> (b) a database;
>
> (c) a transaction server *in communication with* said server front-end and with said database;
>
> (d) a rate server *in communication with* said server front-end; and
>
> (e) a pricing engine *in communication with* said rate server; and further comprising an interest rate manager *in communication with* said transaction server and said database, wherein said interest rate manager is operative to calculate, pay out, and collect interest on a tick-by-tick basis.

('336 Patent 18:19–35, ECF No. 105-2) (emphases added). In short, the claimed "system" can be viewed as a collection of components that are in communication with each other.

OANDA argues that the Court should apply the plain and ordinary meaning of "in communication with" because the language is plain and would be readily understood by a POSA. (POB at 9–11.) Defendants disagree. They contend that "in communication with" should be construed more narrowly as "in *direct* communication" based on how a POSA would interpret the intrinsic record. (DOB at 14–18.) Defendants highlight the way Figure 3 of the '336 Patent depicts

5

direct connections between the relevant components of the systems. (*Id*. at 15.) According to Defendants, this is also consistent with the way the '336 Patent's specification uses the terms "communication" and "communicate." (*Id*. at 15–16.)

Generally, absent lexicography or disclaimer—neither of which the parties argue here—the rule is that a claim term is to be given its ordinary and customary meaning, *i.e.*, the one that a person of ordinary skill in the art would ascribe to it at the time of the invention.[3] *Phillips*, 415 F.3d at 1312–3; *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014). To discern the meaning of "in communication with", the Court begins by considering the language of the claims themselves.

1. *The Claim Language*

The '336 Patent includes eleven claims, seven of which are independent. Each of the seven independent claims consistently uses the term "in communication with" to describe the connections between the components of the system. None of the independent claims provide additional limitations that further define or even distinguish the claim term. Likewise, none of the dependent claims introduce additional, potentially informative limitations. Accordingly, the Court finds the claims of the '336 Patent provide no guidance.

2. *The Specification*

The term "in communication with," the term does not appear in the specification. As support for their position that "direct" should be inserted, Defendants point to Figure 3, which depicts the trading system. Figure 3 does show certain components joined by unbroken lines in a way that suggests a direct connection between those components. The significance of this is limited however, because as the disclosure of the '336 Patent makes clear, Figure 3 is merely describing a preferred embodiment of the claimed system rather than defining the invention. *See*

---

[3] Consistent with the stipulation and order entered in this case, Defendants advise that they are not arguing at this stage of the litigation that the term is indefinite, but reserve their right to do so at a later time. DRB at 3 n. 2; (ECF No. 114).

'336 Patent[4] 2:53–54 ("FIG 3. depicts modules of a *preferred* trading system server." (emphasis added); 3:5–6, 6:20–9:49 (describing the claimed trading system server within the section of the disclosure devoted to "Detailed Description of the *Preferred* Embodiments") (emphasis added). As a corollary to the settled canon of claim construction that limitations from the specification should not be read into the claims,[5] the Federal Circuit has advised that "it is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004). Here, the Court finds no indication in the specification, much less a clear one, that the inventors intended to limit their claims to trading systems whose components were in direct communication with each other. In fact, there is evidence to the contrary. In two points in the specification show below, the inventors specifically call out a *direct* communication and a *direct* connection.

> (11) Partner Bank Interface 335. This module *communicates directly* with the backend Partner Bank to issue trades and obtain account information.

'336 Patent 9:29–31 (emphasis added).

> For security reasons, the Database 310 is on a separate back-end network; this way, it is not *connected directly* to the Internet and can only be accessed by the Transaction Server 355:

'336 Patent 9: 63–66 (emphasis added). This suggests that the inventors were conscious of a distinction between a direct communication and a broader concept of "in communication with" that encompasses both direct and indirect communication. Because the inventors appear to have intentionally specified the broader language in their claims, the Court rejects Defendants' proposed

---

[4] The Court cites to the relevant portions of the patents in this opinion by their column and line.
[5] The Federal Circuit recently re-endorsed this canon in *Sorrel Holdings, LLC v. Infinity Headwear & Apparel, LLC*, App. No. 22-1964, 2024 WL 413432, at *2 (Fed. Cir. Feb. 5, 2024) ("[W]e have repeatedly held that courts should not read limitations from the specification into the claims.")

construction of "in direct communication" because it does not "naturally align with the patent's description." *Phillips*, 415 F.3d at 1316 (citation omitted).[6] Accordingly, the Court concludes that "in communication with" should be given its plain and ordinary meaning. In order to conclusively resolve the parties' dispute, the Court finds that the term should be defined as "in direct or indirect communication with." *See O2 Micro Intern. Ltd. v. Beyond Innovation Technology Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008) ("A determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute.")[7]

**B.     Term 4: "determining/determined"**

The '311 Patent includes seven claims directed to methods of trading currencies. There are two independent claims: 1 and 7. Claim 1 is exemplary and uses the term "determining" in the first step (i) of the method:

> 1. A method of trading currencies over a computer network connecting a trading system server and at least one trading client system, comprising the steps of:
>
> (i) at the trading system server, *determining* and dynamically maintaining a plurality of current exchange rates, each current exchange rate relating to a pair of currencies and including a first price to buy a first currency of the pair with respect to a second currency of the pair and a second price to sell the first currency of the pair with respect to the second currency of the pair;

---

[6] Although not argued by the parties, the Court further finds that the instances Defendants cite in the specification in favor of their proposed construction do not "rise to the level of either lexicography or disavowal" required to narrow the construction of "in communication with" to "in direct communication with." *See Thorner v. Sony Computer Entertainment America LLC*, 669 F.3d 1362, 1368 (Fed. Cir. 2012) (rejecting district court's construction of "attached" that impermissibly narrowed the term's definition to an attachment to an exterior surface because the specification lacked the clear and explicit statement sufficient to justify either lexicography or disavowal.)

[7] A patent's prosecution history is typically reviewed by a court as part of its consideration of the intrinsic record for claim construction. Here, the parties do not cite the prosecution history beyond Defendant's passing assertions that nothing there supports OANDA's positions. (*See* DOB at 23; DRB at 1, 22.) Accordingly, the Court does not consider the prosecution history of the patents in suit for the purposes of its present claim construction.

> (ii) transmitting data from the trading system server to a trading client system, the transmitted data representing at least one current exchange rate at the time of the transmission;
>
> (iii) at the trading client system, displaying the first and second prices for each received current exchange rate to a user;
>
> (iv) at the trading client system, accepting input from the user identifying a pair of currencies the user desires to trade, an amount of at least one currency of the pair desired to be traded and a requested trade price at which it is desired to effect the trade;
>
> (v) transmitting the accepted input from the trading client system to the trading system server;
>
> (vi) at the trading system server, comparing the requested trade price to the respective first price or second price of the corresponding current exchange rate at that time and, if the respective first price or second price of the corresponding current exchange rate at that time is equal to or better than the requested trade price, effecting the trade at the corresponding respective current exchange rate first price or second price and if the corresponding current exchange rate is worse than the requested trade price, refusing the trade; and
>
> (vii) transmitting from the trading system server to the trading client system an indication of whether the trade was refused or transacted and, if transacted, an indication of the price the trade was transacted at.

'311 Patent 17:53–18:24 (emphasis added). Thus, claim 1 of the '311 Patent is essentially a seven-step method for trading currencies over a network, whose steps include "*determining* and dynamically maintaining a plurality of current exchange rates" "at the trading system server."

The related term "determined" is used in the claims as well, but only in the dependent claims at claims 2 through 6. As an example, claim 2 depends from claim 1 and uses the term "determined" in the context of providing more detail as to how the requested trade price is set at step (iv) of Claim 1:

> 2. The method of claim 1 wherein the requested trade price is derived from a respective one of the first price or second price of the received current exchange rate and a user input limit value defining a maximum acceptable difference between the respective one of the first price or second price of the received current exchange rate received at the trading client system and the respective one of the first price or second price of the corresponding current exchange rate

9

>   *determined* at the trading client system at which the trade can be effected.

'311 Patent 18:25–33.

OANDA again argues that the Court should apply the plain and ordinary meaning of "determined"/"determining" because the language is plain and would be readily understood by a POSA. (POB at 18.) It cites the patent specification and claims in support of its position. GAIN counter-proposes that the term be construed as "calculated"/"calculating." It argues that this is consistent with the specification's use "calculating" when it describes the process of "determining and dynamically maintaining a plurality of exchange rates" as recited in claim 1. (DOB at 19.) GAIN also argues that its position is supported by the language of the claims. (*Id*. at 20–21.)

>   1.  *The Claim Language*

All of the claims that use the terms "determining" and "determined" employ it to refer to some means by which the claimed method arrives at one or more numerical figures. *See* claims 1, 2, 3, 5, and 7 (referring to exchange rates), and claim 4 (referring to appropriate values for input fields at step (b) and requested trade price at step (d)).

In its opening brief, OANDA and its expert posit that step (d) of claim 4 describes a step of a user choosing between a first price and a second price. (POB at 20.) OANDA argues that this instance of "determining" that suggests a mere choice between two options rather than a calculation supports a construction of "determining" that is broader than GAIN's proffered definition. (*Id*.) OANDA does not reiterate this position in its responsive brief or its contemporaneous expert declaration. In fact, it does not mention claim 4 at all in its responsive brief. As GAIN notes in its opening and responsive briefs, step (d) is more than a choice between two prices. A closer reading of claim 4 together with the specification suggests that step (d) instead involves determining (in some fashion) a requested trade price based on the selected first (buy) price, the selected second (sell) price, and a (user-input) limit value. Based on the context, in this

instance more than a choice is at play. The Court therefore finds unpersuasive this argument raised in OANDA's opening briefing, but abandoned in its responsive brief.

Because the claims otherwise provide no distinguishing features to aid in construction, the Court turns next to the specification for guidance.

### 2. The Specification

Gain cites the claim phrase "determining and dynamically maintaining a plurality of exchange rates" in both claims 1 and 7. It argues that this step is described in the specification as "calculating," and that a POSA would therefore understand "determining/determined" to mean calculating. (DOB at 19–20.) Gain cites various examples of this from the specification.

- "calculating a market exchange rate for the received currency trade order" ('311 Patent at 1:65-66, 2:8-9)
- "the most current 'market rates' (as calculated by the system)" ('311 Patent at 4:17-18)
- "where the market price is calculated based on such factors as market data, size of the transaction, time of day, the Trading System's current exposure, and predictions on market direction" ('311 Patent at 4:47-50)
- "a current market price for the currency the trader desires to purchase is calculated" ('311 Patent at 5:17-18)
- "the calculated market price is within the limits set by the trader in the market order form" ('311 Patent at 5:20-24)
- "Various methods of calculating such rates are known to those skilled in the art" ('311 Patent at 7:17-18)

(*Id*. at 19.)

In response, OANDA contends that the inventors' use of "calculated" in the specification versus "determined" in the claims actually favors its position. In its view, the difference indicates that the inventors were aware of the two terms and could have used the term "calculated" in their claims but chose not to do so.

The Court finds OANDA's argument persuasive. Moreover, Gain's support from the specification cites either to passages that describe one "aspect" of the invention, *i.e.*, merely one

11

example of the invention,[8] or to passages from the detailed description of *preferred* embodiments.[9] Imposing a limitation in the way Gain suggests, without a clear indication that the inventors intended one would also be improper under Federal Circuit guidance, as set forth above. *Liebel-Flarsheim*, 358 F.3d at 913. The Court finds no such clear indication, especially given that the specification itself employs "determining/determined" at four separate points, and its usage in those instances suggests a broader construction insofar as it describes the operation of different elements of the system:

> For orders, [the Server Front-End] executes the orders by issuing appropriate requests to the transaction server after checking the margin requirements, the availability of funds, and using rates as *determined* by the pricing engine.

'336 Patent 6:50–62 (emphasis added).

> The daemons continuously monitor the current rates to *determine* whether action is required.

'336 Patent 8:54–55(emphasis added).

> This information is made available (a) to the Pricing Engine 325 (where it is used to set the currency exchange rates made available to the traders), (b) to the Hedging Engine 340 so that it can *determine* when to issue trades with the Partner Bankend Bank, [sic] and (c) to system operators and Trading System financial engineers in real time via a feature-rich Web interface.

'336 Patent 9:11–17(emphasis added).

> (10) Hedging Engine 340. This module continuously monitors current Trading System currency positions, the positions held in the trader accounts, recent trading activity, and the market direction and volatility to *determine* when to issue a trade with the backend Partner Bank.

---

[8] ('311 Patent at 1:65-66, 2:8-9)
[9] ('311 Patent at 4:17-18), ('311 Patent at 4:47-50), ('311 Patent at 5:17-18), ('311 Patent at 5:20-24), and ('311 Patent at 7:17-18).

12

'336 Patent 9:19–23 (emphasis added). In sum, the Court rejects Gain's attempt to narrow the term "determined/determining" to "calculated/calculating," and finds that its plain and ordinary meaning should instead apply.

Having resolved the parties' dispute, the Court finds that no further construction beyond plain and ordinary meaning is required as to this term. *See GPNE Corp. v. Apple Inc.*, 830 F.3d 1365, 1372 (Fed. Cir. 2016) ("[A] sound claim construction need not always purge every shred of ambiguity.") (citation omitted); *PPG Indus. v. Guardian Indus. Corp.,* 156 F.3d 1351, 1355 (Fed. Cir. 1998) ( "[A]fter the court has defined the claim with whatever specificity and precision is warranted by the language of the claim and the evidence bearing on the proper construction, the task of determining whether the construed claim reads on the accused product is for the finder of fact.")

C.   Term 2 ("pricing engine") and Term 3 ("hedging engine") ,

The parties dispute over "pricing engine" and "hedging engine" is whether the terms should be treated as means-plus-function limitations under 35 U.S.C. § 112 ¶ 6. Gain argues for the application of § 112 ¶ 6, OANDA argues against its application.

Means-plus-function claiming occurs when a claim term is drafted in a manner that invokes 35 U.S.C. § 112, para. 6, which states:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

*Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1347 (Fed. Cir. 2015) (en banc).

A means-plus-function claim construction analysis requires a two-step process. *Dyfan, LLC v. Target Corp.*, 28 F.4th 1360, 1365 (Fed. Cir. 2022) (citation omitted). First, a court determines whether the disputed limitation is drafted in means-plus-function format, *i.e.*, "whether [or not] it connotes sufficiently definite structure to a person of ordinary skill in the art." *Id*. If

13

the claim limitation does connote sufficiently definite structure, it is not written in means-plus-function format and § 112 ¶ 6 does not apply.  However, if the claim limitation is written in means-plus-function format, the court continues to step two, which requires it to determine "what structure, if any, disclosed in the specification corresponds to the claimed function." *Williamson v. Citrix Online, LLC*, 792 F.3d, 1339, 1351 (Fed. Cir. 2015) (citation omitted).

In the absence of the word "means," there is a rebuttable presumption that the limitation is not drafted in means-plus-function format. *Dyfan*, 28 F.4th at 1365.  This presumption "can be overcome and § 112 [¶] 6 will apply if the challenger demonstrates that the claim term fails to 'recite[ ] sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'" *Williamson*, 792 F.3d at 1348–49 (citation omitted).

Gain concedes that it must overcome a presumption against means-plus-function treatment because the disputed terms do not include the word "means." (DOB at 5–6.)  It (and its expert) nevertheless insists it should still be applied because "pricing engine" and "hedging engine" do not readily connote structure to a POSA. (*Id*. at 9–10.)  Moreover, they assert that a POSA would understand that the term "engine" is a nonce term similar to "module," that should be construed as means-plus-function terms.  (*Id*. at 9.)

OANDA maintains that its claim language recites sufficient structure to avoid § 112 ¶ 6 treatment and submits its own expert declaration.  It argues that the plain and ordinary meaning of the term should apply.  (POB at 14–15.)  It objects to Gain's attempt to characterize "engine" as a nonce term, and cites various out-of-district court decisions concluding that the term "engine" is understood to be a software program and is therefore not considered a nonce term.  (*Id*. at 15–17.)

With respect to a means-plus-function analysis, software-related patents differ from other patents to some degree.  Notably, the Federal Circuit has acknowledged that "[u]nlike in the mechanical arts, the specific structure of software code and applications is partly defined by its function." *Dyfan*, 28 F.4th at 1368.  A court can look beyond a term to the functional language to

14

see if a POSA would have understood the claim limitation as a whole to connote sufficiently definite structure. *Id.*

As a starting point, the claim terms themselves appear to at least suggest their own functions. It is a "*pricing* engine" or a "*hedging* engine" that the claims recite, not merely a generic engine. As to structure, based on claim 1 of the '336 Patent, a POSA would understand, for example, that a pricing engine is part of the claimed system that is in communication with a rate server, which is in communication with a server front-end, which is in communication with a computer network. *See* '336 Patent 18:19-34. This favors rejecting a means-plus-function construction. *See Williams*, 792 F.3d at 1351 (observing that the failure to describe the interaction with other components of system militates in favor of finding a claim term should be construed as means-plus-function.) Based on the specification, a POSA would further understand that the pricing engine "computes the currency exchange rates that the traders see and that are used for trading. These are computed from the currency exchange rates obtained from the external rate sources, the directional movement and volatility of the market, the current Trading System exposure and a number of other parameters." '336 Patent 7: 14–22. Thus, there is information in the intrinsic record regarding the position of the pricing engine within the claimed system as well as its function.

Likewise, based on claim 7 of the '336 Patent, a POSA would understand that a hedging engine is in communication with the transaction server and performs at least two of the seven calculations (a)–(g) identified by the claim. '336 Patent 20:1–12. The specification provides additional detail for the "hedging engine" by further describing its function, observing that hedging calculations are known, and providing (and incorporating by reference) a patent application disclosing an example of a hedging tool. '336 Patent 9:19–28.

Having reviewed the parties' submissions, including their respective expert declarations, the Court finds that Gain has not rebutted the presumption that "pricing engine and "hedging

15

engine" are not means-plus-function terms under § 112 ¶ 6, and that the plain and ordinary meaning of these terms should be applied.[10]

### D.     Term 5 ("current exchange rate") and Term 6 ("requested trade price")

The Court declines to address at this stage the parties' disputes as to the remaining claim terms because they entail a determination of validity. The Court advised the parties of its intent to defer validity when they filed a joint claim construction and prehearing statement under Local Patent Rule 4.3 that indicated their disputes as to these terms were tied to the validity of the asserted claims. (See Docket Entry dated January 19, 2022) ("ATTENTION COUNSEL: After a preliminary review of the recently filed Joint Claim Construction and Prehearing Statement [103], and in the interest of conserving the resources of the parties, the Court advises counsel that it does NOT intend to address issues of validity as part of the claim construction process.") The Court also reminded the parties during the Markman hearing that it would not be considering issues of validity at this stage. Markman Hearing Tr. 5:6–11; 8:4–7. As a practical matter, it is preferable to address validity on a more developed record. Moreover, this case is to be tried to a jury, therefore certain ultimate facts should be preserved for its consideration. *See United States v. Esnault-Pelterie*, 299 U.S. 201, 205 (1936) ("Validity and infringement are ultimate facts on which depends the question of liability. In actions at law they are to be decided by the jury.")

### V.     CONCLUSION

For the reasons stated above, the Court decides the parties' claim construction disputes as follows:

[INTENTIONALLY LEFT BLANK]

---

[10]

| **Claim Term** | **Court's Claim Construction** |
|---|---|
| "in communication with" | "in direct or indirect communication with" |
| "pricing engine" | Plain and ordinary meaning (Not means-plus-function) |
| "hedging engine" | Plain and ordinary meaning (Not means-plus-function) |
| "determining/determined" | Plain and ordinary meaning |
| "current exchange rate" | Indefiniteness issue deferred |
| "requested trade price" | Indefiniteness issue deferred |

Date: **June 26, 2024**

                                                s/ Zahid N. Quraishi
                                                **ZAHID N. QURAISHI**
                                                **UNITED STATES DISTRICT JUDGE**