UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| OANDA CORPORATION, | : |
| Plaintiff, | : Civil Action No. 20-5784 (ZNQ)(JTQ) |
| v. | : **MEMORANDUM OPINION** |
| | : **AND ORDER** |
| GAIN CAPITAL HOLDINGS, INC., *et al.*, | : |
| Defendants. | : |

  This District has a comprehensive set of Local Rules that specifically address patent litigation. These Local Rules provide parties (and the Court) with a helpful framework to litigate cases in this complex area of law and to do so with efficiency. To achieve this, the Local Patent Rules require litigants to develop and share their legal theories *early*, and to support these theories with various disclosures.

  But sometimes circumstances in litigation change. When that happens, the Local Patent Rules allow a party to revisit its earlier theories and, if necessary, file a motion to amend them. *See* L. Pat. R. 3.7. That is precisely what Defendants have done here. (ECF No. 227). As set forth below, the Court finds that Defendants' motion is timely and supported by good cause. Therefore, the Court grants the motion.[1]

---

[1] The Court thanks both Parties for their exceptional briefing.

I. **BACKGROUND**

Plaintiff OANDA Corporation ("Plaintiff") is in the business of currency trading and is the owner, by assignment, of U.S. Patent Nos. 7,146,336 (the '336 Patent) and 8,392,311 (the '311 Patent) (together, "the Patents"). ECF No. 59 (Amended Complaint, "Am. Compl.") ¶ 3. Plaintiff alleges that Defendants Gain Capital Holdings Inc. ("Holdings") and Gain Capital Group, LLC ("Capital") (collectively, "Defendants") have infringed at least one of the claims of the Patents by making, using, selling, offering for sale, or selling products and/or services that meet each of the limitations of at least one of the claims of the Patents. *See id.* ¶¶ 66, 70. More specifically, Plaintiff contends that Capital has made, used, sold, and offered for sale infringing instrumentalities at https://forex.com and Holdings has used those infringing instrumentalities, including the application programming interfaces ("APIs"), to operate automated infringing trading systems. *Id.* Plaintiff further alleges that despite being made aware of their infringement, Defendants "continue to use subcontractors, managers, agents, or other third parties to operate or assist in the management of [their] online trading systems, or to provide additional services in connection with [their] services, including by use of [their] platform's APIs." *Id.* ¶ 75.

Defendants served their first invalidity contentions on September 17, 2021. ECF No. 231 (Plaintiff's Opposition Brief, "Opp. Br.") at 5.[2] Plaintiff asserts that many of the claim charts Defendants produced "purporting to compare the infringed

---

[2] The page numbers cited herein are those provided by PACER.

patents to alleged prior art references" were left blank and, upon receipt, Plaintiff objected to the contentions on this basis. *Id*. at 5-6. Plaintiff further contends that the gaps in the claim charts remained even after Defendants served a second version of their invalidity contentions on March 4, 2024. *Id*. at 6.

The Court issued its Claim Construction Opinion and Order on June 26, 2024. ECF No. 213 (the "Opinion"). In the instant motion, Defendants seek to amend their invalidity contentions based on the claim constructions set forth in the Opinion. Defendants argue that there is good cause to amend their invalidity contentions because the Court's decision broadened the scope of the Patents' claims. ECF No. 229 (Defendants' Moving Brief, "Mov. Br.") at 10-11, 14, 16-17.

Despite Defendants' efforts to confer soon after the Opinion was issued, Plaintiff posits that Defendants' motion is untimely and should be denied because they should have anticipated that the Court might adopt the plain and ordinary meaning of all disputed terms before the Opinion was issued. Opp. Br. at 8-9. Plaintiff further argues that Defendants failed to establish good cause for their amendments. *Id*. at 8-12.

Defendants contend that Plaintiff applies "an unfounded timing requirement" and ignores Defendants' "substantive demonstration that each amendment is related to [the Court's] claim construction." ECF No. 232 (Defendants' Reply Brief, "Reply Br.") at 6, 10. Unsurprisingly, the Parties also have diverging views on whether the proposed amendments would cause Plaintiff undue prejudice. Opp. Br. at 13-14; Reply Br. at 14-15.

3

## II. LEGAL STANDARD

This District's Local Patent Rules "are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *Antonious v. Nike, Inc.*, 2015 WL 6122457, at *2 (D.N.J. Oct. 15, 2015). Importantly, the Federal Circuit has held that "[d]ecisions enforcing local rules in patent cases will be affirmed unless clearly unreasonable, arbitrary, or fanciful; based on erroneous conclusions of law; clearly erroneous; or unsupported by any evidence." *Shire LLC v. Amneal Pharms., LLC*, 802 F.3d 1301, 1306 (Fed. Cir. 2015).

Local Patent Rule 3.7 permits a party to seek to amend its contentions when "(1) there is a timely application, (2) there is a showing of good cause, and (3) the adverse party does not suffer undue prejudice." *Celgene Corp. v. Natco Pharma Ltd.*, 2015 WL 4138982, at *3 (D.N.J. July 9, 2015). And while the standard to amend contentions is a stricter one than that governing the amendment of pleadings, "Rule 3.7 is not a straitjacket into which litigants are locked from the moment their contentions are served, but instead, a modest degree of flexibility [exists], at least near the outset." *Antonious*, 2015 WL 6122457 at *2.

Rule 3.7 sets forth a list of "[n]on-exhaustive examples of circumstances that may, absent undue prejudice to the adverse party, support a finding of good cause" to amend invalidity contentions. L. Pat. R. 3.7. This list includes:

> (a) a claim construction by the Court different from that proposed by the party seeking amendment; (b) recent discovery of material prior art despite earlier diligent search; (c) recent discovery of nonpublic information about

4

>the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contention; (d) disclosure of an infringement contention by a Hatch-Waxman Act party … ; and (e) consent by the parties in interest to the amendment and a showing that it will not lead to an enlargement of time or impact other scheduled deadlines."

"The party seeking the amendment bears the burden of demonstrating good cause for the amendment." *Eisai R & D Mgmt. Co. v. Shilpa Medicare Ltd.*, 656 F. Supp. 3d 515, 521 (D.N.J. 2023); *see also Takeda Pharm. Co. Ltd. v. Sun Pharma Glob. FZE*, 2016 WL 9229318, at *4 (D.N.J. May 16, 2016) (same).

"The key factor courts look at to determine whether good cause exists to grant an amendment to a contention is the diligence of the moving party." *Eisai R & D Mgmt. Co.*, 656 F. Supp. 3d at 521. Diligence requires proceeding "both with diligence throughout discovery and in discovering the basis for the proposed amendment, as well as promptly moving to amend when new evidence is revealed in discovery." *Id*.

### III. ANALYSIS

Defendants' motion satisfies Rule 3.7's requirements as it was timely filed and is supported by "good cause." Therefore, the Court grants Defendants' motion and permits the amendment.

#### A. Defendants' Motion is Timely

As an initial matter, the Court finds that the instant motion was made "upon a timely application." L. Pat. R. 3.7. Nothing Plaintiff argues changes this conclusion.

Plaintiff oversimplifies what it would have required for Defendants to anticipate the Court's decision and seek to amend their invalidity contentions in

5

response to claim construction briefing years ago." Opp. Br. at 10. Plaintiff contends that Defendants were placed on notice of Plaintiff's proposed alternate claim construction not when the Opinion was issued on June 26, 2024, but when Plaintiff filed its opening brief in advance of the *Markman* hearing on March 4, 2022. *Id.*

But this certainly is not the standard, and the Court is unwilling to begin using this date as a marker to assess timeliness. The plain language of Rule 3.7(a) states that good cause for the amendment of any contentions exists where there is "a claim construction by the Court different from that proposed by the party seeking amendment." Inherent in this language is that the party seeking amendment waits for the Court to issue its claim construction before it can determine whether to file a motion to amend. Plaintiff's interpretation of when the clock starts would read this language out of the Rule.

Indeed, in this Court's view, it is unreasonable to expect Defendants to anticipate this particular claim construction simply because it appeared in Plaintiff's briefing. To be sure, just because a party proposes a construction does not mean that is a construction the Court will adopt. As the Parties know well, in rendering a *Markman* decision, the Court has many options. It can side with one of the parties either in full or in part or can (and frequently does) craft a construction of its own, thus rejecting both sides' constructions. To suggest that Defendants somehow either should have known or could have predicted which direction the Court would rule is not an argument the undersigned is willing to accept, particularly where, as here, the Court analyzed and construed multiple disputed terms. *See Celgene Corp. v. Natco*

*Pharma Ltd.*, 2015 WL 4138982, at *4 (finding "given the volume of disputed patents, claims, and claim terms, it was not unreasonable that Defendants delayed moving to amend until after this Court issued its *Markman* opinion").

Furthermore, Plaintiff fails to suggest what Defendants should have done differently here to satisfy Plaintiff's definition of a "timely" amendment. Plaintiff appears to imply that Defendants should have provided *draft* amendments to the Parties' joint claim construction statement based upon Plaintiff's proposed constructions *before* the Court rendered its decision. But the Court's Local Patent Rules do not impose such a requirement, nor is the Court persuaded that such a practice would provide a benefit to the *Markman* process. In fact, the Court believes there would be a significant waste of party resources if such a practice were adopted, since parties often disagree on the construction of terms and thus *hypothetical* constructions would become standard practice. The Court cannot and will not sustain this argument. And tellingly, Plaintiff never states that it employed its own suggested practice. That is because this is not a realistic standard.

Nor is the Court persuaded by Plaintiff's legal citations. *See* Opp. Br. at 9. For example, Plaintiff relies heavily on the decision in *Takeda*, but *Takeda* is not binding on this Court, and the Undersigned respectfully finds that reaching a similar outcome here would be improper. In this case, years passed between the time of the Parties' briefing and the issuance of the Opinion. Requiring Defendants to speculate so long before the Court reached its decision would be unreasonable and would fly in the face of what is contemplated by Rule 3.7(a). The Rule specifically provides that there is

7

good cause for amendment where the movant sought a construction different "from that proposed by the party seeking amendment." There is nothing in the Rule to suggest that this different construction must be anticipated by a party. Further, once the Opinion was issued, the only time that passed before Defendants filed this motion was a product of the meet and confer process that Defendants initiated in hopes of obviating the need to file a motion at all. The Court finds no reason to discourage efforts to reach a resolution like the ones Defendants displayed here.

Plaintiff's additional citations fair no better. Indeed, the remaining cases did not even interpret Local Patent Rule 3.7; they addressed proposed amendments that sought to add new prior art references and/or legal theories—amendments that are substantively different than those sought by Defendants here, which include additional disclosures related to *already disclosed* prior art. *See* Mov. Br. at 11, 13, 14.[3]

Therefore, the date from which timeliness is measured is June 26, 2024, the date the Opinion was issued. Since that day, Defendants made efforts to meet and confer with Plaintiff to address the proposed amendments. Mov. Br. at 6. In fact, Plaintiff agrees that on July 26, 2024, 30 days after the Opinion date, Defendants

---

[3] *See Silver State Intell. Techs., Inc. v. Garmin Int'l, Inc.*, 32 F. Supp. 3d 1155 (D. Nev. 2014) (striking amendments with new legal arguments and new prior art); *Convolve, Inc. v. Compaq Computer Corp.*, 2006 WL 2527773, at *3 (S.D.N.Y. Aug. 31, 2006) (striking amended invalidity contentions with "seventy-two new prior art references, thirty associated invalidity contentions, and five new non-prior art invalidity theories"); *Bausch & Lomb Inc. v. Vitamin Health, Inc.*, 2015 WL 13574308 (W.D.N.Y. Sept. 29, 2015) (denying motion that sought to add six prior art references that were not mentioned in earlier contentions); *Verinata Health, Inc. v. Sequenom, Inc.*, 2014 WL 789197 (N.D. Cal. Feb. 26, 2014) (denying motion to add new prior art references).

sent Plaintiff their proposed amendments, asking if Plaintiff would oppose them. Opp. Br. at 7. Thereafter, Defendants assert that the parties met and conferred on August 13, 2024, and continued to exchange email correspondence in hopes of resolving the contention objections until they reached an impasse on August 21, 2024. Mov. Br. at 6. Defendants filed a letter seeking leave to file this motion on August 23, 2024. *Id.* at 4 (citing ECF No. 223).

While the Parties met and conferred, less than two months passed. Where courts have found motions to amend untimely, movants took more time to file than Defendants did here. *See, e.g.*, *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1367 (Fed. Cir. 2006) (affirming district court's holding that three months passing between learning new infringement theory and filing motion showed lack of diligence); *Jazz Pharms., Inc. v. Roxane Lab'ys, Inc.*, 2013 WL 785067, at *4 (D.N.J. Feb. 28, 2013) (holding that a five-month delay did not constitute "diligence"). Notably, in *TFH Publications, Inc. v. Doskocil Manufacturing Co.*, the Court held that the "two months [was not] an inordinate amount of time to give notice of one's intent to amend its infringement contentions." 705 F. Supp. 2d 361, 367 (D.N.J. 2010). In so holding, the Court addressed the early stage of discovery as a factor contributing to its reasoning. As discussed further below, though the *Markman* hearing already took place in this case, the Parties are still months away from the fact discovery deadline. As such, like in *TFH Publications, Inc.*, discovery is not far enough along to render Defendants' motion untimely.

Accordingly, Defendants have filed a "timely application" to amend their invalidity contentions.

### B. Defendants Have Established Good Cause for Amendment

After determining that a motion is timely, "[t]he key factor courts look at to determine whether good cause exists to grant an amendment to a contention is the diligence of the moving party." *Eisai R&D Mgmt. Co.*, 656 F. Supp. 3d at 521. The Court has little trouble finding that Defendants have acted diligently.

First, Rule 3.7(a)'s plain language must be emphasized because Plaintiff seems to overlook it. The Rule expressly provides that, absent prejudice, "**a claim construction by the Court different from that proposed by the party seeking amendment**" may support a finding of good cause. Nowhere does the Rule provide that this "different" claim construction must be "a novel or unfamiliar interpretation," as Plaintiff asserts. Opp. Br. at 10.

Second, Plaintiff's argument that Defendants' proposed amendments are a mere "tactic" to backfill their invalidity charts is unpersuasive. *See* Opp. Br. at 15. While Plaintiff agreed not to oppose certain of Defendants' proposed amendments, it opposes others, which Plaintiff contends have "nothing to do with claim construction" but are instead "attempts to belatedly fill in the blanks with references to prior art" that Defendants failed to include in their prior sets of invalidity contentions. Opp. Br. at 7. Plaintiff's claim that Defendants were "admittedly aware of these references years ago and yet chose to leave pages of the chart entries entirely blank" is directly refuted by Defendants, who instead contend that, "the additional disclosures in

10

GAIN's prior art references became highly material once the Court construed the claims." Opp. Br. at 15; Reply Br. at 13.

It is undisputed that in the weeks that followed the issuance of the Opinion, Defendants provided Plaintiff with red-lined, color-coded proposed supplemental invalidity charts. ECF No. 230-2 to -40. Specifically, in the charts, Defendants assigned a color to each of the disputed terms construed by the Court and explained how each amendment related to one of the Court's constructions. Plaintiff calls this "a failure of diligence that compels a denial," however, the Court fails to see how such amendments have "nothing to do with claim construction." Opp Br. at 15, 7.

Furthermore, courts have found that movants acted "sufficiently diligent to support a finding of good cause" where proposed amendments, like Defendants' here, "are not motivated by gamesmanship or an effort to shift [ ] strategy late in [the] litigation." *Eisai R&D Mgmt. Co.*, 656 F. Supp. 3d at 526. Defendants have submitted proposed amendments that do not "advance new legal theories, introduce new prior art, or otherwise 're-investigate' [their] invalidity position." Reply Br. at 9; Opp. Br. at 7. With invalidity positions and legal theories unchanged, Plaintiff will simply have to review additional disclosures on the same prior art references that Plaintiff has already had years to consider and analyze. As such, Defendants have demonstrated good cause and the fact that Defendants' proposed amendments supplement sections of invalidity charts that were previously blank does nothing to change the Court's analysis.

### C. Plaintiff Will Not Suffer Undue Prejudice

Finally, since Defendants have established diligence, the Court will next consider whether the proposed amendments are likely to unduly prejudice Plaintiff. *See Jazz Pharms., Inc.*, 2013 WL 785067 at *5 (explaining that "the Federal Circuit has made it clear that the Court only considers undue prejudice if the moving party's application was both timely and satisfies the good cause requirement of Rule 3.7"). In evaluating whether Plaintiff will be unduly prejudiced, courts consider whether the proposed amendments would "(1) require [Defendants] to expend significant additional resources, or (2) significantly delay the resolution of the dispute." *See e.g. TFH Publications, Inc.*, 705 F. Supp. 2d at 366. Notably, "[w]hile there could be some resulting prejudice, denial of leave to amend requires that additional work required be substantial or 'undue.'" *Amgen Inc. v. Kashiv Biosciences, LLC*, 2019 WL 5445974, at *3 (D.N.J. Oct. 24, 2019).

Here, the Court concludes that no undue prejudice exists. Put simply, Defendants' proposed amendments will neither result in any significant expenditure nor create significant delay. And while the Court appreciates Plaintiff's arguments to the contrary, they do not withstand scrutiny. Specifically, Plaintiff asserts that the amendments would prevent the parties from proceeding with a "swift" exchange of discovery and cause experts to have to "redo" their work. Opp. Br. at 17. But as Defendants correctly highlight, the amendments do not add any new prior art or invalidity position and that Plaintiff fails to explain how permitting amendment

12

would impact the fact discovery deadline, which is months away. Opp. Br. at 13-14; Reply Brief at 14-15.

The only expenditure of additional resources that Plaintiff identifies are those in connection with experts redeveloping their rebuttal arguments. Opp. Br. at 16. While some additional work *may* be required, the Court is not convinced that either Plaintiff's experts will have to "redo" work or that any additional work would be significant enough to unduly prejudice Plaintiff, particularly since no new prior art or legal argument is being introduced in Defendants' amendments. *See* Opp. Br. at 17.[4]

As for the stage of this litigation, while it is not in its infancy, the case is not so far along that the amendments Defendants propose would significantly delay resolution of the dispute. *TFH Publications, Inc.*, 705 F. Supp. at 366. The deadline for document production has not yet passed, the fact discovery deadline is not until February 21, 2025, and expert disclosures are due in April and June 2025. ECF No. 218. And, should the need arise, the Court would entertain a request from either Party to adjust the deadlines in the Scheduling Order. For these reasons, the Court is unable to find any potential for prejudice to Plaintiff, let alone any prejudice that cannot be cured by simply extending the discovery deadlines.

---

[4] Plaintiff's citation to *Nautilus* and *Jazz Pharmaceuticals* are unavailing as both reviewed the issue of undue prejudice where the proposed amendments included new prior art. *See id.* (citing *Nautilus Neurosciences, Inc. v. Wockhardt USA LLC*, 2013 WL 7901901, at *8 (D.N.J. Jan. 23, 2013); *Jazz Pharms., Inc.*, 2013 WL 785067 at *8).

## IV. CONCLUSION

For the reasons set forth above, Defendants' application to amend to their invalidity contentions was made timely, for good cause, and without imposing undue prejudice of Plaintiff. Accordingly,

**IT IS** on this 22nd day of November 2024,

**ORDERED** that Defendants' motion for leave to amend their invalidity contentions [ECF No. 228] is GRANTED; and it is further

**ORDERED** that the Clerk is directed to terminate ECF No. 228.

JUSTIN T. QUINN
United States Magistrate Judge